PHILLIPS & BUTTORFF MFG. CO. v. WHITNEY.

(Circuit Court of Appeals, Fifth Circuit. May 29, 1900.)

No. 904.

ASSIGNMENT FOR BENEFIT OF CREDITORS—TITLE OF ASSIGNEE—UNENUMERATED PROPERTY.

A citizen and resident of Iowa, owning real property in Alabama, which he had leased for a term of years, taking notes for the rent, made a general assignment for the equal benefit of all his creditors in accordance with the statutes of Iowa, and at the same time conveyed his real estate in other states (including that in Alabama) to the assignee upon the same trust. The lease and notes were delivered to the assignee as a part of the assigned estate. *Held*, that he was vested with the legal title thereto, and he or his successor in the trust, appointed on his resignation by the district court of Iowa, as authorized by statute, might maintain an action on such notes in his own name, and that such right was not affected by the fact that the notes were not enumerated in the schedule of property attached to the deed of assignment.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

The following statement, taken from the briefs of counsel, is substantially correct:

In 1886 Franklin H. Whitney, the assignor of defendant in error, purchased the S. ½ of lot 10, block 101, in Birmingham, Ala. One Elliott was then tenant under Whitney's vendor, and became Whitney's tenant, paying him rent after his purchase. About November, 1886, Elliott transferred his lease to the

plaintiff in error, which was then doing business in Birmingham under the assumed name and style of James B. Hopkins & Co., and none other: the business being carried on entirely by one James B. Hopkins, as general manager and vice principal for the plaintiff in error, itself a Tennessee corporation, located and doing its chief business in Nashville, Tenn. From November, 1886, to October, 1888, the plaintiff in error, under its assumed name of James B. Hopkins & Co., continued to pay rents under Elliott's unexpired lease to Whitney, who knew the concern only by its fictitious name, and had dealings only with James B. Hopkins. On the 25th of August, 1888, after occupying Whitney's premises nearly two years, the plaintiff in error, still calling itself James B. Hopkins & Co., and still acting and doing business in Birmingham altogether by and under that name alone, and through the said James B. Hopkins only. who was clothed by the plaintiff in error with full authority to execute a lease and notes, and was the sole party known to Whitney in the matter, rented the same property from the same landlord for a term of three years, ending October 1, 1891, at $125 monthly, or $1,500 per annum, and executed, by signing the same fictitious name, a lease, and 36 notes of $125 each for the rent. Under the same name, and by drafts of the same James B. Hopkins, it paid most of these rent notes; but those for the last few months were paid under a new assumed name, of Hopkins Stove & Roofing Company, and some notes through one Frank Hopkins. Early in January, 1891, the defendant's then manager, one Frank Hopkins, proposed to Whitney, who still knew nothing of plaintiff in error's connection with the concern, to rent the premises for five years from October 1, 1891. The plaintiff in error claims that these negotiations for a new lease were unauthorized, and in fact forbidden, by it, but, if so, Whitney knew nothing of it, and it is not pretended that he did. The negotiations went on, at first through Frank Hopkins, and later through his successor, James B. Hopkins. Whitney making expensive repairs and improvements in view and consideration of the proposed renting and lease, which was actually made and executed on August 19, 1891, for the plaintiff in error by the same James B. Hopkins, its manager or vice principal, who signed duplicate leases and 60 rent notes, mentioned and described in the lease, for $150 each, in the third fictitious name, recently assumed, under which the plaintiff in error was then doing business on the premises leased from Whitney, namely, "Hopkins Stove & Tinware Company, J. B. H., Man'g'r." These 60 notes were to mature monthly, beginning on November 1, 1891. The plaintiff in error continued its business on the same premises, with James B. Hopkins still its manager and vice principal; the home officials of the plaintiff in error knowing this, and coming frequently from Nashville and exercising active oversight of the business, but making no objections as to the last lease, and not even, as they profess, asking about it. Of this supervision, however, the landlord, Whitney, living several hundred miles away, was entirely ignorant. The rent notes for the premises up to February 1, 1892, were promptly paid by plaintiff in error, still through drafts drawn by said James B. Hopkins. The fifth note was paid in part only; the rest of it not being exacted, because of a fire in the building, rendering it untenantable, on the 12th of February, 1892, for which reason, also, the sixth and a part of the seventh rent notes were not attempted to be collected. The fire above mentioned, on February 12, 1892, rendered the leased premises untenantable. While Whitney's building on the rented premises was still burning, the plaintiff in error notified him by telegraph of the fire, demanding cancellation of the lease and answer by wire. Whitney refused to cancel the lease, and informed the plaintiff in error that he would repair the building and hold it to its contract. He did so repair it, in proper manner and with reasonable diligence, and at once tendered the building to the plaintiff in error, who refused to receive or occupy it: setting up as a pretext that the fire of February 12th had itself canceled the lease, according to its own terms. By agreement of parties, the leased premises were to be rented out by W. B. Leedy & Co., and the rents to be paid to F. H. Whitney, for the benefit of the party entitled, without prejudice, however, to the rights of either party. This has been done. After the maturity of the eighteenth of the series of 60 rent notes, in 1893, Whitney brought suit on all those due and unpaid, back to and including the seventh, in the city court of Birmingham. The cause was tried by the judge of the court, without a jury, both as

to issues of fact and law, and resulted in a judgment for Whitney. As indicated by the record, almost every conceivable issue was raised by the defendant there (plaintiff in error here). The general issue was pleaded, denying all the material allegations of Whitney's complaint. The execution by the defendant itself of both the notes and lease sued on, and the authority of James B. Hopkins to make them, were denied by sworn pleas, which were met and overcome. Unlawful eviction by the landlord pending the lease was set up as a defense; also, that the lease was annulled by the temporary untenantable condition of the leased premises, occasioned by the fire of February 12, 1892. All these issues, and all others involved in them, were determined after a trial upon the merits, both in law and in fact, in favor of Whitney, first in the city court of Birmingham, and afterwards on appeal to the supreme court of Alabama, which itself passed upon all the issues in the case of every kind, both of fact and law, and in all things affirmed the findings and judgment of the court below. See Manufacturing Co. v. Whitney, 109 Ala. 645, 20 South. 333.

On the 29th of September, 1896, F. H. Whitney, residing at Atlantic, Cass county, Iowa, executed, with his wife, a voluntary trust deed of general assignment for the benefit of all his creditors equally, conveying to James B. Bruff, as trustee and assignee, all his property, both real and personal, except such as was exempt from execution in the state of Iowa, and expressly his "personal property, wheresoever situated." This trust deed was duly authenticated, filed, and recorded, under the laws of the state of Iowa, where both the assignor and the assignee resided, at Atlantic, in Cass county. The assignee, Bruff, in October, 1896, qualified, filed his inventories, and was placed in full possession and control of the trust estate, including the notes and lease now sued on in this action, and they were held by him in his possession and control when this suit was brought. The real property of the assignor, Whitney, in Alabama, for rents of which said lease and notes were executed, was also conveyed at the same time to his assignee, Bruff, for the same purpose, and the conveyance, duly executed, was filed and recorded in Jefferson county, Alabama. On the 11th of October, 1896, F. H. Whitney died, leaving a will, in which his son James G. Whitney is named sole executor, with very ample powers, and relieved from giving bond as such.

On the 2d of October, 1897, the said James B. Bruff, as assignee of F. H. Whitney, and the owner of the remaining 42 rent notes and the lease executed on August 19, 1891, brought this action thereon by summons and complaint, the latter counting on the said notes and the said lease, and in two common counts against the plaintiff in error, who removed the cause into the United States circuit court at Birmingham. In that court the plaintiff in error first filed on November 26, 1897, 17 demurrers to the complaint, of which the first 8 are omitted from the record. All these were overruled, except one (No. 13), for misjoinder of causes of action in the first count. This misjoinder was cured November 29, 1898, by amendment. On January 24, 1899, the plaintiff in error increased its demurrers, by additions or repetitions, to 32. On the next day, January 25, 1899, the plaintiff in error filed 15 pleas to the complaint, of which the last 9 are not in the record. To these pleas the defendant in error filed a number of replications on April 1, 1899. And, with the pleadings in this condition, the depositions of James B. Bruff and James G. Whitney were regularly taken and certified under a commission for the purpose issued from the court below. The cause coming on for trial on the 12th of December, 1899, the court below permitted the plaintiff in error to withdraw its pleas and refile its 32 former demurrers, and increase the number 12 more by additions or repetitions,—to 44 in all. These were all then overruled. The plaintiff in error then moved the court below to strike out counts 1 and 2 of defendant in error's complaint. This motion was denied. The plaintiff in error then moved the court below to require the defendant in error to elect upon which of the said counts he would proceed. This the court refused. The plaintiff in error then refiled its 15 pleas, of which only 7 appear in the record, and enlarged the number by amendment to 19. To all these the defendant in error refiled its replication. To these the plaintiff in error filed 10 demurrers,—about the same with the 44 filed to the complaint. These were all overruled. The plaintiff in error then filed 4 rejoinders to the replication. None of the 19 pleas or of the 4 rejoinders was verified by affidavit. And thus the case went to the

jury. The plaintiff in error introduced the 42 notes for $150, sued on, and described in the first count of the complaint, and therein alleged to have been executed August 19, 1891, by the plaintiff in error, which was then a corporation doing business in Birmingham under the name of Hopkins Stove & Tinware Company, by signing them, "Hopkins Stove & Tinware Co., J. B. H., Man'g'r," and which were also averred expressly to be unpaid, and the property of the defendant in error, as the assignee of F. H. Whitney, in which character, as plaintiff, he was prosecuting the action. The court below allowed the introduction of these notes, against many objections, which were overruled. The defendant in error then introduced in evidence, against objections which were overruled, the complete record in the cause of Manufacturing Co. v. Whitney, from the supreme court of Alabama, containing all the pleadings, testimony, opinion, and judgment therein. The opinion shows the issues, conclusions of law, and findings of fact in that cause. The defendant in error then offered in evidence the lease described and sued on in the second count of his complaint, and therein alleged to have been executed August 19, 1891, by the plaintiff in error, then doing business in Birmingham, Ala., under the name and style of Hopkins Stove & Tinware Company, by signing the same, "Hopkins Stove & Tinware Company, J. B. H., Man'g'r," and later proved that the rents under said lease from April 1, 1893, to October 1, 1896, at $150 per month, were due and unpaid, and the property of the defendant in error. The court below allowed the said lease to be introduced, against the objections of the plaintiff in error. The plaintiff in error then offered in evidence, without objection, the statutes of Iowa, the state of the domicile of F. H. Whitney and James B. Bruff, and also of James G. Whitney, the defendant in error, declaring the effect of trust deeds of assignment for creditors, and the rights, title, duties, and powers of trustees or assignees under voluntary deeds of general assignment. It was admitted that the district courts in the state of Iowa have original and general jurisdiction in all matters both of law and equity, including wills and estates, assignments, trusts, and trustees. The legal rate of interest in Iowa was agreed to be 6 per cent. Without objection, the agreement of April 25, 1892, executed by the plaintiff in error under the name of "Hopkins Stove & Tinware Co., per J. B. Hopkins," and by Franklin H. Whitney, by Garrett & Underwood, his attorneys, was admitted in evidence; and, further, it was admitted that plaintiff in error had received the benefits thereof up to April 1, 1893, and in the settlement of the judgment recovered by F. H. Whitney against the Phillips & Buttorff Manufacturing Company in the city court of Birmingham. The defendant in error introduced oral testimony that none of the notes sued on have ever been paid; that the only subscribing witness to the lease in Alabama (Dr. J. B. Vann) has been dead for years; that he appeared in the city court of Birmingham on the trial of the cause of F. H. Whitney against the Phillips & Buttorff Manufacturing Company, and testified to his attestation of the lease for five years, dated August 19, 1891, and that he was a witness to the signature of the lease, which was the signature of Mr. James B. Hopkins, manager of the Hopkins Stove & Tinware Company; and that all the 60 notes, including the 42 now sued on and offered in evidence, were signed in his presence. The signatures to these notes were also proved directly by W. B. Leedy to be in the handwriting of James B. Hopkins, the general manager and vice principal of defendant in error. This testimony was admitted by the court notwithstanding objections by the plaintiff in error, the depositions of James B. Bruff, the legal counsel and assignee of F. H. Whitney, and an attesting witness to his will, and James G. Whitney, of Atlantic, Iowa, the son and sole executor of F. H. Whitney, and his partner in the banking business, taken under a commission from the court below, together with the exhibits thereto, which appear in the record. The court below, on objection by the plaintiff in error, suppressed some small parts of these depositions, but these are not shown in the record. These depositions establish fully that Franklin H. Whitney (known as F. H. Whitney) was a resident of Atlantic, Cass county, Iowa, on the 29th of September, 1896; that he then made a trust deed of general assignment to James B. Bruff, which is shown in the record, for the equal benefit of all his creditors; that this deed was duly executed and recorded; that the assignee, Bruff, duly qualified, made bond, and entered upon his duties as such; that all the property, real and personal, of

F. H. Whitney, including the notes and lease sued on, were turned over to him as trustee under the assignment, and that neither F. H. Whitney in his lifetime, nor his executor since his death, has ever made or set up any claim to the lease and notes sued on since September 29, 1896; that James B. Bruff, as assignee of said F. H. Whitney, was in possession and control, by his attorneys, of the lease and 42 notes sued on when he brought suit thereon in this action on the 2d of October, 1897; that said notes given for rents due under said lease were then unpaid, and so remain; that about the 18th of March, 1898, said James B. Bruff, assignee, settled his trusts as assignee of F. H. Whitney, resigned, and was discharged as such, after turning over all the trust property remaining in his hands to his successor, James G. Whitney, the defendant in error, who had been duly appointed his successor as assignee, all of which was regularly done in the district court of Cass county, in the state of Iowa, which is shown to have had original, full, and general jurisdiction of the subject-matter and parties on the premises. It was agreed that the amount due upon the notes and lease sued on, if the defendant in error was entitled to recover, with interest computed at 8 per cent., less rents collected, and credited with interest at 8 per cent. under agreement of April 25, 1892, with the agreed attorney's fee of $600, would be altogether $6,635.72.

The plaintiff in error, as already stated, offered no testimony, but asked permission to verify its 19 pleas, which the court below refused. The plaintiff in error then asked the court to give the general charge on the evidence in its favor on each of the five counts of the complaint, each of which the court refused. The plaintiff in error asked four other charges, as to whether the lease and notes sued on were Iowa or Alabama contracts, and whether the rate of interest on them was 6 per cent. or 8 per cent., all of which the court refused. The defendant in error then asked the court, in writing, to charge the jury, if they believed the evidence, they must find for the plaintiff below (the defendant in error here). The court gave this charge, and the jury returned a verdict for the defendant in error for $6,635.72. The plaintiff in error now assigns 90 errors in the action of the court below.

J. Quintus Cohen and Henry R. Dill, for plaintiff in error.

James J. Garrett and R. H. Thach, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. As this case is presented for our review, it seems clear that the Phillips & Buttorff Company, defendant below and plaintiff in error here, really and substantially owes to the estate of F. H. Whitney the full amount of the principal and interest of the notes sued on, and against them, when sued on by the proper plaintiff, said company has no defense, legal or equitable, and that the plaintiff below (defendant in error here) is the legal and beneficiary owner and holder of the notes in question, either as the assignee of Franklin H. Whitney, under an assignment for the benefit of creditors executed by Franklin H. Whitney in his lifetime, or as executor of the last will and testament of Franklin H. Whitney, duly executed and probated. The defense in the court below, so far as it had any merit, was on the line of defect in plaintiff's title as assignee of Franklin H. Whitney, and to that question were directed most of the demurrers, pleas, objections to evidence, and requested charges to the jury, with which the record abounds. On that question nearly all of the 90 assignments of error and the bulk of the very able and ingenious briefs of counsel in this court are based; and it seems clear that if that question is ruled, as we think it should be, in favor of the defendant in error, there can be no good reason for considering other rulings of the trial court, which, even if erroneous, were

not really injurious to the plaintiff in error, provided the plaintiff below was the legal owner and holder of the notes sued on.

The undisputed facts are that on or about the 29th day of September, 1896, the said Franklin H. Whitney and Ella Whitney, his wife, conveyed to said James B. Bruff, as trustee, by certain trust deeds, all their real estate then owned by said Franklin H. Whitney, without preference to any creditors, and further in trust for the payment of the debts of the Bank of Atlantic, said real estate being certain lands in Colorado and Missouri and in the state of Alabama, all the real estate owned by said Franklin H. Whitney in the county of Jefferson, state of Alabama, and all the rights and interest of every description whatsoever of the said Franklin H. Whitney in said real estate; that at or about the time of making said trust deeds the said Franklin H. Whitney made an assignment, purporting to be a general assignment of all his property located in the state of Iowa, to said James B. Bruff, in trust for the payment of his debts and the debts of the Bank of Atlantic; that Bruff accepted the trust and qualified as assignee; that as such he acquired possession of the lease and notes now sued on, as part of said personal property, and thereafter brought this suit; that later still he regularly settled his trust in the district court of Cass county, Iowa, resigned, and was discharged; that thereupon said court appointed James G. Whitney, the plaintiff, trustee in the assignment; that he accepted and qualified as such, and Bruff was ordered to convey and deliver all the trust estate to him, and in conformity he transferred the notes by indorsement, and the lease by such delivery as was practicable, to James G. Whitney, whereby there was vested in Whitney all the title that had been in the assignor, Whitney, and in his original assignee, Bruff. And when it is considered that under the laws of the state of Iowa, where Whitney, the assignor, and Bruff, his assignee, had their domiciles, which law controls in the premises as to personalty, the said general assignment made by F. H. Whitney on September 29, 1896, was authorized and valid; that it devested out of said Whitney, and invested in his assignee, Bruff, "the title to any property belonging to the assignor [Whitney] at the time of making the assignment" (McClain's Code Iowa, §§ 3292-3294 [2115-2117]); that said assignee, Bruff, thereby became vested, when duly qualified, with as "full power and authority to dispose of all the estate, real and personal, assigned, as the debtor had at the time of the assignment, and to sue for and recover in the name of such assignee everything belonging or appertaining to said estate, and generally do whatever the debtor might have done in the premises," with one exception, affecting only the sale of real property (Id. § 3306 [2127]); that the district court of Iowa for Cass county, in that state, is a superior court of record, of general jurisdiction both at law and in equity, with full jurisdiction of the trusts of said assignment from Whitney to Bruff; that having acquired jurisdiction, in fact, of such trust estate and trustee, said district court was fully empowered and authorized, in all cases shown to it to be proper, to remove such trustee, or, if he died, resigned, or failed to exercise the trust as by law required, to appoint a successor, who, when qualified under its orders, is declared by law to "possess all

the powers conferred upon such assignee, and shall be subject to all the duties hereby imposed as fully as though named in the assignment" (Id. § 3307 [2128]),—we feel bound to hold that the plaintiff below acquired a title good in every respect until impeached by fraud or mistake.

The plaintiff in error contends that no title whatever passed from Franklin H. Whitney to James B. Bruff, the assignee, under the deed of assignment executed on September 29, 1896, because, while the same purports to be a general assignment, wherein the said Franklin H. Whitney sells, transfers, and conveys to James B. Bruff "all of my property, both real and personal, except such as is exempt from execution, wherever situated, in the state of Iowa, and my personal property, wheresoever situated; Schedule A, hereto attached, being a list of my personal property assets, and Schedule B, hereto attached, being a list of my real estate hereby conveyed. And, in case any real or personal property subject to execution in the state of Iowa is not included in the above list, I hereby convey the same as fully as though the same were mentioned therein,"—it was in fact only a partial conveyance, and the personal property conveyed was only that enumerated in Schedule A, as follows: "Personal Property of Franklin H. Whitney. Forty-seven shares of the Atlantic Water Company; one large fire-proof safe, containing burglar-proof chest, now in Whitney Building, Kansas City, Missouri; one fire-proof safe, now used by Bank of Atlantic; one Diebold burglar-proof safe, now used by Bank of Atlantic,"—and, on this construction, claims that the case is in all respects identical with, and should be controlled by, Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314. Bock v. Perkins was a contest between a creditor and an assignee, in which it was claimed by the creditor that, while the deed of assignment purported to be a general assignment, the same was intended to be, and in fact was, only a special assignment, and, in addition, claimed it was void because it contained unlawful preferences. The supreme court held, as a matter of law, that, as to the property actually assigned, the schedule referred to in the assignment as more particularly describing the property conveyed controlled, and, as a matter of fact, that the assignment was not intended to be, and was not, a general assignment, and, from this fact, further held that the statute of the state of Iowa which provides that a general assignment for the security of creditors shall vest in the assignee the title to all of the property belonging to the debtor at the time of making the assignment, whether included in the inventory or not, was not applicable; quoting Van Patten v. Burr, 52 Iowa, 518, 3 N. W. 524, for the proposition, "The transaction contemplated in the Iowa statute, and termed a general assignment," is a disposition of all the property of the insolvent for the benefit of all his creditors. We distinguish the present case from Bock v. Perkins, supra, because the assignment made by Whitney to Bruff not only purported to be a general assignment, but was in fact intended to be a general assignment, which, with trust deeds of the same date to the same assignee, would convey all his property, except that exempt from execution under the laws of Iowa, for the equal benefit of all his creditors; and this purpose and intent was evi-

denced, not only by the document itself, but by the circumstances surrounding and attending the transaction. The same day the general assignment was executed said Franklin H. Whitney executed and delivered to the same assignee trust deeds conveying all of his real estate, charged with the same trust, situated outside of the state of Iowa, including the real estate in Alabama, the lease of which was the original cause of the present suit; and these trust deeds were evidently made outside of the purported general assignment, to insure the conveyance of the real estate according to the laws of the state where situated. The possession of the Alabama property and the notes given thereunder, evidently in accordance with the purport and intent of the assignor, passed into the hands and control of the assignee. Under these circumstances, we have no doubt, as a matter of fact, that the assignment in question was intended to be and was an assignment of all the property of the assignor, wheresoever situated, for the benefit of all his creditors; and, if it was such an assignment, the omission from the schedule of the lease of the real estate in Alabama and the notes given thereunder was not important, and, in accordance with the laws of Iowa, the assignor's domicile, the lease and notes passed to the assignee with as full title as if they had been expressly mentioned in the schedule. We are not permitted to doubt that the proceedings in the Iowa court in the matter of the assignment of Franklin H. Whitney were in all respects regular and conclusive as to the resignation of Bruff as assignee, and the appointment and qualification of James G. Whitney as assignee in Bruff's place, nor that the order of the court and the conveyance thereunder by Bruff to James G. Whitney operated a full and complete transfer of the legal title and ownership of the lease and notes herein sued on to the present plaintiff in the court a qua. The judgment of the circuit court is affirmed.